IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS A. PERRETTA, JR., an individual; FRANK PERRETTA, an individual<br><br>Plaintiffs,<br><br>v.<br><br>PROMETHEUS DEVELOPMENT CO., INC., a California corporation; SANFORD N. DILLER, an individual; JOHN J. MURPHY, an individual; and VICKI R. MULLINS, an individual,<br><br>Defendants. | No. C 05-02987 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND AND VACATING HEARING AND CASE MANAGEMENT CONFERENCE** |

**INTRODUCTION**

Defendants Prometheus Development Co., Inc. ("Prometheus"), Sanford Diller, John J. Murphy and Vicki R. Mullins move to dismiss plaintiffs' class-action complaint, which alleged breach of fiduciary duty. Defendants move on the grounds that plaintiffs fail to state a claim, that plaintiffs lack standing, that plaintiffs' claims are barred by the business-judgment rule, that Prometheus' officers cannot be liable and that plaintiffs' claims are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Because the Court finds that plaintiffs do not state a claim for breach of fiduciary duty, defendants' motion is **GRANTED** with leave for plaintiffs to amend their complaint.

**STATEMENT**

Plaintiffs Louis A. Perretta, Jr. and Frank Perretta filed a complaint on behalf of several hundred former limited partners in a real-estate partnership called Prometheus Income Partners, L.P. ("the Partnership") (Compl. ¶¶ 1,16). On a motion to dismiss under Rule 12(b)(6), all material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). The Court, therefore, relates the following facts from plaintiffs' complaint as if they were true.

The Partnership's holdings consisted of two apartment complexes (Compl. at ¶ 21). The Partnership brought two lawsuits seeking damages from the manufacturers of deficient-hardboard siding at the Partnership's complexes (*id*. at ¶ 23). The lawsuits settled, resulting in proceeds of $10.8 million for Prometheus, the Partnership's general partner (*id*. at ¶¶ 1, 23). In May 2002, Prometheus announced a proposal (renewed from a similar proposal made in 2000) for the merger of the Partnership into Prometheus' affiliate, PIP Partners (*id*. at ¶ 24). By this merger, PIP Partners was to acquire the entirety of the Partnership's units at $1,714 per unit, for a total transaction of $53,200,000 (*ibid*.). The merger was ultimately approved by the Partnership and closed on August 24, 2005 (*id*. at ¶ 24).

According to plaintiffs, PIP Partners' offer was not the product of competitive bidding, but rather of a "sweetheart deal" arranged by Prometheus' president and sole director, Diller (*id*. at ¶¶ 8, 25). Members of the Partnership solicited other offers, including limited-partner Everest which obtained an offer from Aspen Square Management for $54.5 million with lower transaction costs than PIP Partners' offer (*id*. at ¶ 26). The deal with PIP Partners still went through (*id*. at ¶ 24). Prometheus charged the Partnership for certain costs related to the merger, deducted a prepayment penalty of three-million dollars from the merger total and subtracted a general-partner fee of $532,000 (*id*. at ¶¶ 27–29). Finally, Prometheus excluded the $10.8 million garnered in the siding lawsuits from the merger total, claiming that the cost to perform the repairs would exceed this amount (*id*. at ¶ 25).

Plaintiffs listed six bases for their duty-breach claims against Prometheus, Diller and two of Prometheus' officers, Murphy and Mullins (*id*. at ¶¶ 1, 35). *One*, defendants transferred

the property to an affiliate without seeking the highest price on the market. *Two*, defendants sold the properties without completing the siding repairs, thereby diminishing the properties' value. *Three*, defendants deliberately misrepresented the cost of the siding repairs. *Four*, defendants failed to negotiate with Aspen. *Five*, defendants improperly took a disposition fee for the merger and imposed costs on the Partnership. *Six*, defendants wrongly deducted a penalty from the Partnership's proceeds.

## ANALYSIS

### 1. LEGAL STANDARD.

A motion to dismiss under Rule 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). On the other hand, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

### 2. REQUESTS FOR JUDICIAL NOTICE.

Although materials outside of the pleadings ordinarily are not considered on a motion to dismiss, a court may consider matters properly subject to judicial notice. *See Adibi v. Cal. State Bd. of Pharmacy*, 393 F. Supp. 2d 999, 1003 (N.D. Cal. 2005). A court may take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Defendants seek judicial notice of proxy statements, filed with the SEC, soliciting the Partnership's approval of the merger into PIP Partners (Tricker Decl. Exhs. A–J). Judicial notice of documents filed with the SEC is proper. *See In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 863 (N.D. Cal. 2004). Documents, however, "are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *U.S. v. S. Cal. Edison Co.*,

3

1  300 F. Supp. 2d 964, 975 (E.D. Cal. 2004).  The Court, therefore, grants defendants' request for
2  judicial notice of the proxy materials, but only for this limited purpose.

3        Plaintiffs request judicial notice of a tentative decision issued by the Superior Court of
4  California for the County of San Mateo (Opp. RJN Exh. 1).  The tentative decision (and there is
5  no evidence in the record that this tentative decision has become a final decision since)
6  envisioned awarding damages to a former member of the Partnership for claims against the
7  defendants in this matter, based on allegedly similar arguments (Opp. 3).  The Court first notes
8  that plaintiffs failed to properly authenticate this document by affidavit or declaration, only
9  indicating that the copy of the decision attached to their request is "true and correct" in a
10 footnote in the opposition brief (Opp. 3).  Judicial notice of the document is improper on this
11 ground alone under local rule 7-5(a).

12       Moreover, while the records of other courts, even tentative rulings, may be proper for
13 judicial notice, such notice is granted "only for the limited purpose of recognizing the judicial
14 act that the order [or filing] represents on the subject matter of the litigation." *Lee v. Bender*,
15 C 04-2637, 2005 WL 1388968, *8 (N.D. Cal. May 11, 2005)(internal citations omitted).
16 "[T]he underlying arguments made by the parties, disputed facts, and conclusions of fact"
17 contained in the record are not the subject of judicial notice. *Cactus Corner, L.L.C. v. U.S.*
18 *Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004)(internal citations omitted).
19 Courts should be especially leery of noticing tentative state-court rulings, since a "tentative
20 decision shall not constitute a judgment and shall not be binding on the court . . . a court may
21 enter a wholly different judgment than that announced in its statement of intended decision."
22 *Horning v. Shilberg*, 130 Cal. App. 4th 197, 203 (2005).  Plaintiffs' request for judicial notice
23 is, therefore, denied.

24       On reply, defendants submit a supplemental request for judicial notice seeking notice of
25 four other documents from the state-court proceeding discussed above (Supp. RJN Exhs. A–D).
26 The Court notes that these exhibits also are not authenticated consistently with the local rule.
27 The Court will not rely on these documents.

4

3. **BREACH OF FIDUCIARY DUTY.**

Under California law, which governs here, "[p]artnership is a fiduciary relationship, and partners are held to the standards and duties of a trustee in their dealings with each other." *Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 424 (2003)(*citing BT-I v. Equitable Life Assurance Soc'y*, 75 Cal. App. 4th 1406, 1410 (1999)). "A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his copartner for his share of the prospective business opportunity." *Id*. at 424–425 (internal citation omitted). No breach of fiduciary duty exists, however:

> if there has been a full and complete disclosure, if the partner who deals with partnership property first discloses all of the facts surrounding the transaction to the other partners and secures their approval and consent. . . .  In fact, it would be incongruous to hold that a partner who consented to a partnership transaction, with full knowledge of all of the facts, may later complain and seek damages against the other partner simply because he benefited by the transaction.

*Skone v. Quanco Farms*, 261 Cal. App. 2d 237, 241 (1968).

Plaintiffs cite *Everest* and *BT-I*, *supra*, for the principle that a general partner's fiduciary obligations cannot be waived (Opp. 4). Those cases do stand for the proposition that waiver of these obligations cannot be effected in a partnership agreement. *See Everest*, 114 Cal. App. 4th at 424. As held in *Skone*, however, full disclosure and approval by the unaffiliated partners constitute compliance with fiduciary duties, not waiver thereof. 261 Cal. App. 2d at 241. Any discussion of waiver is inapposite.

Defendants sufficiently describe where their proxy materials contained disclosures relating to the merger (Br. 10–11). The materials disclosed the details and risks of the components of the merger that plaintiffs attacked in their complaint. The proxy materials informed plaintiffs that alternatives were considered to marketing the partnership shares (Tricker Decl., Exh. F at 34–41). The proxy materials discussed the benefits and negatives of selling the properties before completing the siding repairs (*id*. at 40–41). The proxy materials referred to the cost given for the siding repairs as an "estimate," not an exact figure (*id*. at 1, 65). The proxy materials included information about Aspen's competitive bid (*id*. at Exhs.

5

1  G–J). These particular proxy statements included correspondence from limited-partner Everest
2  advocating against approval of Prometheus' proposal based on Everest's view that the potential
3  Aspen deal was better (*id*. at Exhs. G, I). In separate proxy statements, Prometheus explained
4  its belief that the Aspen proposal was flawed (*id*. at Exhs. H, J). Finally, the proxy materials
5  included information as to how the final calculation of the merger consideration was to be
6  performed, including information about costs and fees associated with the transaction (*id*. at
7  Exh. F at 1, 65, 93–4). Plaintiffs do not dispute that a majority of unaffiliated-limited partners
8  voted in favor of the merger despite the disclosures in the proxy materials (Opp. 6). The
9  complaint fails to explain why these disclosures were inadequate and therefore fails to state a
10 claim for breach of fiduciary duty.

      **4.**     **FRAUD CLAIMS RELATING TO THE PROXY MATERIALS.**

12      Perhaps recognizing that their complaint did not plead around the *Skone* rule, plaintiffs
13 announce a revised legal theory in their opposition papers. In the briefing, plaintiffs now
14 contend that "the gravamen of their lawsuit" is that the limited partners were induced to vote in
15 favor of the merger "by statements in proxy materials that were deliberately false and
16 misleading" (Opp. 6). If fraudulent proxy statements constitute the gravamen of plaintiffs'
17 action, however, plaintiffs would have needed to comply with the pleading requirements of
18 Rule 9(b). They did not do so in their complaint.
19      Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances
20 constituting fraud or mistake shall be stated with particularity." The circumstances constituting
21 the alleged fraud must "be specific enough to give defendants notice of the particular
22 misconduct . . . so that they can defend against the charge and not just deny that they have done
23 anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir.
24 2003)(internal citations omitted). This particularity requirement applies to state-law claims
25 brought in federal court. *Id*. at 1103. Moreover, as the *Vess* court explains:

6

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Id*. at 1103–04.

Fraud is not an essential element of a claim for fiduciary-duty breach. *See, e.g.*, *Everest*, 114 Cal. App. 4th at 424. If plaintiffs correctly describe the gravamen of the action, however, all of plaintiffs' claims sound in fraud. In their complaint, plaintiffs did not indicate "the who, what, when, where and how" of the allegedly deliberate misstatements made by defendants in the proxy materials. *Vess* at 1106. Indeed, the complaint only contained one conclusory allegation about the proxy materials, merely stating that they were "materially false and misleading" (Compl. ¶ 17(b)). This was not enough for Rule 9(b). This order allows plaintiffs to amend their complaint so as to attempt to articulate with particularity their new theory of the case. Leave for further amendments will not be granted in all likelihood.

**5.    SLUSA**.

The Court requested supplemental briefing from the parties regarding whether SLUSA requires dismissal of plaintiffs' complaint. *See* 15 U.S.C. 77p. Since the complaint did not focus on any untrue statements or omissions, the complaint is not subject to dismissal under SLUSA. If plaintiffs amend their complaint, the instant ruling does not preclude revisiting the SLUSA issue.

Congress enacted SLUSA "because heightened pleading requirements in federal securities cases caused a pilgrimage of securities claims to state courts, thus circumventing congressional reforms designed to restrict federal securities claims." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1128 (9th Cir. 2002). SLUSA provides for removal and dismissal when (1) a case is a covered-class action, (2) based on state law, (3) that alleges an untrue statement or omission of material fact, or that the defendant used or employed any manipulative or deceptive device or contrivance, in connection with the purchase or sale, (4) of a covered security. *See* 15 U.S.C. 77p; *Patenaude v. Equitable Life Assurance Soc'y of the U.S.*, 290 F.3d

7

1020, 1023–24 (9th Cir. 2002). Specifically, SLUSA's third factor is whether the complaint alleges:

> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. 77p(b)(1)–(2). "SLUSA's language is nearly identical to that of Section 10(b) of the 1934 Act . . . which prohibits fraud 'in connection with the purchase or sale of any security.'" *Falkowski*, 309 F.3d at 1129.

Plaintiffs now argue that the gravamen of their lawsuit is that the Partnership was induced to approve the merger "by statements in proxy materials that were deliberately false and misleading" (Opp. 6). As discussed above, however, plaintiffs did not articulate this theory in their complaint. Instead, plaintiffs focused on defendants' alleged receipt of unfair benefits as a result of the merger (Compl. ¶ 1). In its current form, plaintiffs complaint is not subject to dismissal under SLUSA. 15 U.S.C. 77p. This order makes no final ruling on SLUSA but counsel should be mindful of its requirements in any amendment and in any subsequent motion practice.

**6.   REMAINING ARGUMENTS.**

Until a new amended complaint is before us, we need not reach defendants' remaining arguments regarding the business-judgment rule, plaintiffs' lack of standing or the non-liability of defendants Murphy and Mullins. Plaintiffs, however, should be mindful of these arguments in framing their new pleading.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** defendants' request for judicial notice of proxy materials filed with the SEC, but **DENIES** plaintiffs' request for judicial notice and defendants' supplemental request for judicial notice of certain documents filed in state court. The Court **GRANTS** defendants' motion to dismiss under Rule 12(b)(6). Plaintiffs have leave to file an amended complaint but must do so, if at all, no later than **JANUARY 9, 2006**. Finding oral argument on this motion unnecessary, the Court **VACATES** the hearing scheduled

8

for December 22, 2005.  The Court also **VACATES** the case management conference scheduled for that same day.

**IT IS SO ORDERED.**

Dated:  December 15, 2005

/s/ William Alsup

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE